UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

CELERINO MATA-PRIMITIVO, individually
and on behalf of all other persons
similarly situated,                              ORDER

                                Plaintiffs,     CV 2013-2839 (CBA)(MDG)

       - against -

MAY TONG TRADING INC., et al.,

                                Defendants.

- - - - - - - - - - - - - - - - - - -X

GO, United States Magistrate Judge:

    Plaintiffs Celerino Mata-Primitivo, Santiago Bravo, and Antonio Gonzalez ("plaintiffs") assert claims against May Tong Trading Inc. ("May Tong"), Henry Tong, Jason Tong a/k/a Zhi Rong Tang, and Qi Zhi Chen a/k/a Qi Zhi Chan ("defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. and New York Labor Law ("NYLL") §§ 142, 194-195. Plaintiff Mata-Primitivo commenced the action in May 2013 as a putative collective action and class action on behalf of other former and current non-managerial employees of defendants who were allegedly denied minimum wage, overtime compensation, or "spread of hours" pay from May 13, 2010 to entry of judgement in this case (the "Collective Action Period"). Ct doc. 1 (Compl.) Bravo and Gonzalez, former employees of May Tong, later consented to participation in the action as opt-in plaintiffs. See ct.

docs. 15 (Bravo Consent), 20 (Gonzalez Consent).

Plaintiffs now move: (1) for authorization to disclose the pendency of this action to potential plaintiffs; (2) to compel disclosure of the names, last known addresses, and telephone numbers of potential plaintiffs; (3) for approval of a collective action notice of the pendency of this action to be sent to potential plaintiffs, and (4)for authorization for plaintiffs' counsel to access the defendants' place of business to post the notice and opt-in consent forms.[1]

For the reasons set forth below, plaintiffs' motion is granted to the extent described herein.

## BACKGROUND

Defendant May Tong operates a restaurant food wholesale business located on Meserole Street in Brooklyn, New York. Ct. doc. 21, Ex. 7 ("Tong Decl.") at ¶ 2. Mata-Primitivo alleges in the complaint that the all three individual defendants, Henry Tong, Jason Tong, and Qi Shi Chen, exercised control over the terms and conditions of his employment and had the power to hire

---

[1] Because a motion for a collective action notice is separate and distinct from a motion for class certification under Rule 23 of the Federal Rules of Civil Procedure, Myers v. Hertz, 624 F.3d 537, 555-56 (2d Cir. 2010), the motion is a pretrial matter within this Court's pretrial reference authority. See 28 U.S.C. § 636(b)(1)(A) (excepting class certification motions as a pretrial matter within a magistrate judge's authority); Colozzi v. St. Joseph's Hospital Health Ctr., 595 F. Supp. 2d 200, 204 n.4 (N.D.N.Y. 2009); Patton v. Thomson Corp., 364 F. Supp. 2d 263, 265-66 (E.D.N.Y. 2005) (magistrate judge had authority to compel production of information about putative class members and to permit notice of collective action); Mazur v. Olek Lejbzon & Co., No. 05 Civ. 2194, 2005 WL 3240472, at *2 n.1 (S.D.N.Y. Nov. 30, 2005).

and fire employees, the ability to determine rates and methods of pay and work schedules, and to supervise and control the work of the employees and the quality of the employees' employment. Ct doc. 1 (Compl.) at ¶ 9.

Mata-Primitivo alleges that he was continuously employed by defendants from approximately 1998 through September 2012 as a non-exempt driver's helper and delivery person for defendants' trucking business, which provides food and supplies to restaurants in the New York metropolitan area. Id. at ¶ 19. As he explains in his declaration in support of the motion ("Mata-Primitivo Decl."), during the course of his employement, Mata-Primitivo assisted delivery drivers, unloaded trucks, delivered goods to customers, and assisted customers making in-person supply pick-ups, among other tasks. Mata-Primitivo Decl. at ¶¶ 10, 12. He states that he was told that he would be paid on a weekly salary basis. See id. at ¶ 18. The defendants operated their business in two locations: one located on Meserole Street in Brooklyn, New York and the other on Henry Street in New York, New York. Id. at ¶¶ 5-8. Mata-Primitivo worked at the Henry Street location from 1998 until June 2009, when the defendants ceased operations at that location. Id. at ¶¶ 11-12. Thereafter, he remained employed by the defendants in the same role until September 2012. See id. at ¶¶ 13-17. He alleges that, prior to June 2009, he regularly worked approximately 81-85 hours per week, but was paid less than minimum wage, was denied overtime pay at one and one-half times his regular hourly rate

for hours worked in excess of forty hours per week, and did not receive spread of hours pay for time worked in excess of a ten-hour workday. Id. at ¶¶ 11, 14-15. From June 2009 to September 2012, Mata-Primativo worked approximately 73 hours per week, and received less than minimum wage and no overtime or spread of hours pay. See id. at ¶¶ 16-17, 19-21. Mata-Primativo states that in 2007, he began having to record his work hours via a timekeeping system which required him to punch in and out. See id. at ¶ 22. He states that while he would punch in when he began his workday at approximately 5:30 a.m., he did not normally punch out because the office was already closed by the time he finished his shift for the day. See id. at ¶¶ 11, 13, 22.

Mata-Primativo also alleges that other similarly situated employees were also unlawfully denied minimum wage, overtime compensation, and spread of hours pay. Id. at ¶¶ 25-27. He states that he has knowledge of this based on conversations he had with other former co-workers, and identifies nine persons, including plaintiffs Santiago Bravo and Antonio Gonzalez, who were employed as a driver's helper/delivery person. Id. at ¶ 26. He also names five employees who brought claims before the New York State Department of Labor for wage and labor violations for the period from 2003 through 2009. Id. at ¶ 27. Mata-Primativo states that he was paid cash in weekly installments; from May 13, 2007 until December 2007, he received $420 per week for a regularly weekly schedule of 81 hours; from January 2008 through about May 2009, he received $460 per week for a regular schedule

of 81 hours; from June 2009 through about December 2010, he received $460 per week for a regular weekly schedule of 73 hours; and from January 2011 through about September 2012 he received $480 per week for a regular schedule of 73 hours per week. Id. at ¶¶ 30-33.

Plaintiff Bravo is a former employee of the defendants who worked in a similar capacity as Mata-Primitivo from about 2004 to 2007, and from about October 2008 through December 2011. See ct. doc. 18, Ex. C ("Bravo Decl.") at ¶¶ 4, 8. Bravo states that while employed by the defendants, he regularly worked approximately 78 hours per week and never received minimum wages, overtime compensation, or spread of hours pay. See id. at ¶¶ 9-14, 16. He also states that, like Mata-Primitivo, he was required to punch in and out beginning in October 2008 when he began his second period of employment with the defendants, and that although he would regularly punch in, he did not normally punch out because the office was closed by the time he finished his shift each day. See id. at ¶ 15. He states that from October 2008 until December 2011, he was paid $350 per week in cash for a regular weekly schedule of 78 hours. See id. at ¶¶ 9-10. He also asserts that he was told he would be paid on a weekly salary basis. Id. at ¶ 11. Finally, he names four other employees, including plaintiff Mata-Primitivo, who were similarly denied minimum wage, overtime compensation, and spread of hours pay. Id. at ¶¶ 18-19.

Plaintiffs seek an order permitting disclosure of the names,

addresses, and phone numbers of non-managerial employees who were employed by May Tong during the proposed collective action period, including drivers, driver's helpers, and delivery persons who were not paid minimum wage, overtime for each hour worked in excess of forty hours per week or spread of hours pay, and for court authorized notice informing those potential plaintiffs of the opportunity to "opt-in" to the present action.

In opposition, the defendants contest Mata-Primitivo's assertion that he was continuously employed by the defendants. Jason Tong, in an affidavit, states that he is a manager of defendant May Tong. Tong Decl. at ¶ 1. Tong states that Mata-Primitivo worked for May Tong as a driver's helper from 1999 until about June 2012, but that Mata-Primitivo took several long leaves of absence from his work. See id. at ¶ 6. Defendants also contest the number of hours worked, and, in support, submit a report which reflects the regular and overtime hours worked by the individual plaintiffs and other employees from October 2009 through December 2011. The report does not indicate an hourly rate for any of the employees and many of the numbers have been redacted, including some hourly totals for the individual plaintiffs. Ct. doc. 21, Ex. F (Timesheet Report). Defendants also contest that Bravo was employed by May Tong as driver's helper from about October 2008 through December 2011 asserting that he was instead employed only from November 2009 through January 2010. Tong Decl. at ¶ 7.

Defendants further argue that if the court authorizes

-6-

plaintiffs to send notice, notice should be limited to include only driver's helpers for a period three years prior to the date of the Court's order. See ct doc. 22 (Opp'n) at 11-15. Defendants argue that because Mata-Primitivo and Bravo have only identified other driver's helpers as being similarly situated, the notice should not extend to drivers or other non-managerial employees. See id. at 12. Defendants also argue that plaintiffs should not be permitted to post the notice and consent forms at the defendants' place of business because it would be unnecessary if notice is granted, as plaintiffs may notify potential collective action members by mail, and that it would be "inappropriate" for other workers to see the notice. See id. at 13-14. Finally, defendants argue that, if notice is permitted, it would be overly burdensome and unnecessary to require them to produce telephone numbers of potential collective action members, and that they should be required to produce only names and last known addresses. See id. at 15-16.

## DISCUSSION

Section 216(b) of the FLSA provides:

> An action . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). This procedure permits "'similarly situated'" employees, whose claims are often small and not likely to be brought on an individual basis [to] join together and pool

their resources to prosecute their claims."  <u>Lynch v. United Servs. Auto. Ass'n</u>, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).

In determining whether to authorize the sending of notice to potential plaintiffs of the pendency of a collective action brought pursuant to section 216(b) of the FLSA, courts should engage in a two-step inquiry.  <u>Myers v. Hertz</u>, 624 F.3d 537, 554-55 (2d Cir. 2010).  At the initial stage, "the court will look at the pleadings and affidavits" to analyze whether plaintiff and putative class members are similarly situated. <u>Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 239 F.R.D. 363, 368 (S.D.N.Y. 2007); <u>Flores</u>, 2006 WL 695675, at *2; <u>see</u> <u>Lee v. ABC Carpet & Home</u>, Civ. No. 00-984, 2006 WL 1408837, at *2 (S.D.N.Y. May 22, 2006) (court's initial determination based on "pleadings and affidavits").  If plaintiff makes a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law," the court may authorize that notice be sent.  <u>Id.</u> at 555 (citations omitted); <u>Sobczak v. AWL Indus., Inc.</u>, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007); <u>Fasanelli v. Heartland Brewery, Inc.</u>, 516 F. Supp. 2d 317 (S.D.N.Y. 2007).

Although the plaintiff's burden at this initial stage is not onerous, "[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." <u>Camper v. Home Quality Mgmt. Inc.</u>, 200 F.R.D. 516, 519 (D. Md. 2000); <u>see</u> <u>Lee</u>, 2006 WL 1408837, at *2 (court's determination "based on pleadings and affidavits"); <u>Masson</u>, 2005 WL 2000133, at

*13 (same); 7B Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) ("[c]onclusory allegations are not sufficient. . . . courts requir[e] that there be some factual support and affidavits showing that the class members are 'similarly situated'"). Absent such a showing, an employer may be "unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." D'Anna v. M/A-Com, Inc., 903 F. Supp. 889, 893-94 (D. Md. 1995); see Smith v. Sovereign Bancorp, Inc., No. civ. A. 03-2420, 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003) (conditional certification based solely on allegations in complaint is "an inefficient and overbroad application of the opt-in system and, at worst, it places a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery"). There must be "a factual nexus" between the named plaintiff's claims and those that he alleges are similarly situated. See Mentor v. Imperial Parking Sys., Inc., 246 F.R.D. 178, 181 (S.D.N.Y. 2007); Flores v. Osaka Health SPA, Inc., Civ. No. 05-962, 2006 WL 695675, at *3 (S.D.N.Y. Mar. 16, 2006); Morales v. Plantworks, Inc., Civ. No. 05-2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006). Only after discovery has been completed should the Court engage in a second more heightened stage of scrutiny to determine whether the class should be decertified or the case should proceed to trial as a

collective action. See Lee, 2006 WL 1408837, at *2; Masson v. Ecolab, Inc., 2005 WL 2000133, at *14 (S.D.N.Y. Aug. 17, 2005).

I find that the facts presented by plaintiffs are sufficient at this stage of the litigation to satisfy the requirement of a "modest factual showing" that other employees were subject to similar work schedules and payment procedures as the plaintiffs. Although defendants contest the dates and hours worked by both Mata-Primitivo and Bravo, partially reflected in a heavily redacted log that purportedly reported the regular and overtime hours worked by the individual plaintiffs and other employees from October 2009 through December 2011, see Ct. doc. 21, Ex. F (Timesheet Report), defendants admit the plaintiffs have worked for much of the period at issue. In light of the evidence presented about other employees, I find that the plaintiffs have provided sufficient detail on payment procedures and the hours that they and other employees worked.

However, the scope of that notice should not be as broad as plaintiffs have proposed. Plaintiffs have made specific allegations about their hours and how they were paid for their work by defendants. Although plaintiffs claim this practice was applied to other employees, their affirmations and pleadings only refer to the policy as applied to employees who worked in a similar capacity -- that is, only other employees who were also driver's assistants. Other than including "non-managerial" workers in the description of who should receive notice of this action, plaintiffs have made no allegations that those other

employees were similarly affected by the defendants' employment practices and defendants assert that there is no "delivery person" position.  Thus, the phrase "all other non-managerial positions" is too broad to encompass "similarly situated" employees based on the limited facts contained in the affidavits and pleadings.  Based on the parties' submissions, the notice should be limited to "drivers, driver's helpers, and those employees that participated in delivery of goods to customers and loading and unloading of trucks."

Next, I find that the time period beginning May 13, 2010 and running to the present is the appropriate time frame because the FLSA has a three-year statute of limitations period for willful violations, which plaintiffs allege in this case.  Although "notice should generally be directed to those employed within three years of the date of the Order granting conditional certification or to the mailing of the notice," see Chhab v. Darden Restaurants, Inc., 2013 WL 5308004, Civ. No. 11-8345, at *15 (S.D.N.Y. Sept. 20, 2013) (citing 29 U.S.C. § 255), courts have permitted the period of employment to run from three years prior to the commencement of the action, rather than the date of the notice, as the claims of the potential opt-in plaintiffs are tolled on the date that their consent forms are filed, id. at *15-*16 (concluding that the notice period could be measured three years from the date of the commencement of the action where "defendants would be perversely incentivized to drag out preliminary discovery so as to shorten the pre-filing notice

-11-

period"). See Thompson v. World Alliance Financial Corp., 2010 WL 3394188, Civ. No. 08-4951, at *7 (permitting tolling of the notice period to run three years prior to the commencement of the action); Sexton v. Franklin First Financial, Ltd., 2009 WL 1706535, Civ. No. 08-4950, at *10 (E.D.N.Y. June 16, 2009) (permitting tolling of the notice period to the date of the commencement of the action because the date of commencement of the action was the earliest possible date that a plaintiff might have been last employed by defendants in order to have a timely claim under the FLSA). Although the plaintiffs have not alleged that the defendants seek to take advantage of the intervening time between the commencement of this action and the date of the notice, the Court finds that the appropriate notice period should run from the May 13, 2010 to the present, particularly since the claims of potential opt-in plaintiffs are tolled on the date that their consent forms are filed, and the notice must be amended in Section III to reflect this date. Defendants are free to challenge the timeliness of individual plaintiffs' claims in the future.

Third, plaintiffs' request for Court-ordered access to defendants' place of business to post the notice and consent forms is granted. Defendants oppose this request, arguing that it will disrupt the course of business and would serve to notify a larger group than is defined in the notice, since other employees could see the notice. However, "[s]uch posting at the place of employment of potential opt-in plaintiffs is regularly

approved by Courts."  See Hernandez v. NGM Mgmt. Group LLC, 2013 WL 5303766, Civ. No. 12-7795, at *5 (S.D.N.Y. Sept. 20, 2013).

Fourth, defendants must, within 21 days of the entry of this order, provide plaintiffs with the names, last known address and telephone numbers of all potential opt-in plaintiffs who worked in the above-described capacities for the period beginning May 13, 2010 to the present.  Although defendants object to the production any information other than the names and last known addresses of the similarly-situated employees, arguing that names and addresses are sufficient to disseminate the notice and that additional information might provide those potential plaintiffs with misinformation, courts routinely order discovery of names, addresses, telephone numbers, and other information in FLSA actions.  See e.g., Ack v. Manhattan Beer Distributors, Inc., 2012 WL 1710985, Civ. No. 11-5582, at *6 (E.D.N.Y. May 15, 2012) (names, addresses, and telephone numbers); Gorey v. Manheim Servs. Corp., 2010 WL 5866258, Civ. No. 10-1132, at *6 (S.D.N.Y. Nov.10, 2010)(names, dates of employment, last known mailing address, email address, and telephone number).

Fifth, the notice shall direct potential opt-in plaintiffs to send the signed consent forms to plaintiffs' counsel, but shall be modified to clearly indicate that opt-in plaintiffs' have the right to select their own counsel.  Although "courts are split as to whether opt-in plaintiffs should file their consent forms individually or through plaintiffs' counsel," when the notice instructs that opt-in plaintiffs can select their own

counsel, "there is only a minimal risk that opt-in plaintiffs will be discouraged from seeking their own counsel." See Limarvin v. Edo Restaurant Corp., 2013 WL 371571, Civ. No. 11-7356, at *3 (S.D.N.Y. Jan. 31, 2013) (internal quotations omitted). The Court agrees that requiring such forms to the Clerk of Court might prove intimidating to potential opt-in plaintiffs and may prevent individuals from joining the action.

Sixth, a primary purpose of the notice is "to make as many potential plaintiffs as possible aware of this action and their right to opt in. . . ." Enriquez v. Cherry Hill Market Corp., Civ No. 10-5616, 2012 WL 440691, at *2 (E.D.N.Y. Feb. 10, 2012). The language in paragraph 2 of section I incorrectly states that the notice would be for the sole purpose of determining the identity of those persons who wish to be involved in this case and to inform those persons of how their rights might be affected if they choose to join. The exact language will be discussed at a scheduled conference.

Finally, plaintiffs do not object to adding defense counsel's information to one area of the proposed notice. The Court agrees. See Harhash v. Infinity West Shoes, Inc.,2011 WL 4001072, Civ No. 10-8285, at *4 (S.D.N.Y. Aug. 25, 2011).

CONCLUSION

For the forgoing reasons, the Court grants plaintiffs' motion (1) for leave to send a collective action notice to the extent discussed above and as will be further discussed at a

conference; (2) to compel defendants to disclose the names, last known addresses, and telephone numbers of potential plaintiffs who were employed as drivers, driver's helpers, or who participated in deliveries and the loading and unloading of trucks from May 13, 2010 to present; and (3) for access to post a notice at defendants' place of business.

**SO ORDERED.**

Dated:    Brooklyn, New York
          May 15, 2014

                                   /s/
                                   MARILYN D. GO
                                   UNITED STATES MAGISTRATE JUDGE